# Nicholson's Appeal.

1. Ignorance of duty on the part of the guardian, through which the interests of the minor have suffered, is within the definition of misconduct, and is a ground for his removal.

2. The provision in the Act of 29th March, 1832, that persons of the same religious persuasion as the parents shall be preferred by the Court in their appointment of guardians, should be observed when practicable; but a difference of persuasion is not a ground for the discharge of a guardian, if no constraint is put upon the conscience of the minor, or the impressions made by the parent on the mind of the child attempted to be erased.

3. That the decree of removal was confined to two of five wards, is not a proper ground of complaint on the part of the guardian; or that he was directed to pay his own costs.

4. On appeal by the guardian alone from such a decree, this Court, on the application of the complainant, will not remove the guardian from his appointment as to the other minors. Besides, where there has been a hearing in the Court below, and a decision on the merits, the decree will not be altered in this Court for anything short of palpable injustice.

APPEAL from the decree of the Orphans' Court of *Erie county*.

[Nicholson's Appeal.]

Andrew Nicholson, on the 28th February, 1850, was appointed by the Orphans' Court, of Erie county, guardian of the persons and estates of the five minor children of Malchia Brindle, deceased, late of Erie county. Their mother also was dead. The guardian gave security as required by the Court. The real estate of the minors produced about $100 annually. It was alleged, on the part of the guardian, that the appointment was acceptable to the brothers and sisters of the father, and to the minors. The guardian lived in Erie county, and was a farmer. He was married to a sister of the mother of the minors, and was alleged to be a respectable citizen.

A petition of E. B. Ward, a maternal uncle of the minors, residing in Michigan, was presented to the Orphans' Court in May, 1852, stating the decease of the mother of the minors in 1849; that two of the children were then in his family, he having assumed the expense and care of their maintenance and education. That one other of the children was residing with the guardian, and two others in the family of an uncle in Erie county. It was alleged that the guardian had not properly discharged his trust, as related to the mental and moral culture and the pecuniary interests of the children; that the one, a female, who resided in his family, was employed in domestic services unsuitable to her condition and tender age, and that her education was neglected; and that he had refused to allow her to receive clothing purchased by petitioner for her use. That, knowing that the children were not enjoying the care and attention they ought to have, the petitioner offered to take them to his own house, and to assume the expense of their maintenance and education, and that such offer was refused;—and that the guardian had refused to allow those of the children living in Erie county to visit those living in Michigan, though the petitioner offered to pay the expense.

An answer by the guardian was filed, in which it was alleged, that the personal estate of the wards was on interest, and that no part of it had been or would be appropriated to their support, but would be permitted to accumulate for their use. That their clothing was sufficient and comfortable; that he resided in an improved section of the county; that churches and school-houses were convenient, and that his wards enjoyed the advantages which these afforded, and that the son was sent to a select school. He averred that the inclemency of the season and their tender years were to him a sufficient reason for declining to permit the visit by one of his wards to Michigan, and that he had discharged his trust to the best of his judgment and ability.

Depositions were taken.

On the 15th June, 1852, a paper, executed by the petitioner, was filed, by which he agreed, that, if a guardian were appointed as he suggested, he would educate the children in the best manner

until they arrived at the age of twenty-one years, or marry, free of expense to their estate; and that, should they bid fair to do well, he would give $500 to each, on their arrival at mature age, or on their marriage.

On the same day, the Court dismissed Nicholson from the guardianship of two of the children, viz., two of the females, one of whom lived in Erie county, and the other in Michigan; and as to the residue of the petition, it was dismissed, each party to pay his own costs.

From this decree the guardian appealed. The 5th section of the Act of 29th March, 1832, provides, " That persons of the same religious persuasion as the parents of the minors shall, in all cases, be preferred by the Court in their appointment."

Exception was filed to the dismissal, it being alleged that there was no proof of misconduct on the part of the guardian, in regard to the maintenance, education, or mental interests of the minors. 2. For discharging him as to the guardianship of the persons of *two* of the minors, and permitting him to remain as to the persons of the other three, and the estate of all of them. 3. In decreeing that he should pay costs.

In support of the exceptions reference was made to the 5th, 12th, and 32d sections of the Act entitled " An Act relating to Orphans' Courts," passed the 29th of March, 1832. The 12th section, being the material one, is in these words :—

" SECT. XII. The Orphans' Court shall have power to remove any guardian, whether testamentary or otherwise, on due proof of his mismanagement of the minor's estate, or misconducting himself in respect to the maintenance, education, or moral interests of the minor; in any such case the Court shall have power to order the offending guardian to deliver up, assign, transfer, and pay over to the successor in the guardianship, or to such persons as the Court shall appoint, all and every the goods, chattels, rights, credits, title deeds, evidences, and securities whatsoever, belonging to the minor, and in the hands or under the power of the guardians, and to make such other order and decree, touching the premises, as the interest of the minor may require."

The Orphans' Court cannot dismiss a guardian unless there is mismanagement or misconduct charged, and sustained by the evidence : Shilling's Appeal, 1 *Barr* 90.

*Thompson*, contrà.—By the 4th section of the Act of 29th March, 1832, the Court has power to remove a guardian. " The jurisdiction of the several Orphans' Courts of this Commonwealth shall extend to and embrace the appointment, control, removal, discharge of guardians," &c., &c.

This is re-enacted by Act of 16th June, 1836, section 19.

The Court of Chancery in England had the care of orphans,

and of course the control of guardians; and as to its jurisdiction and practice it is said in note 13, chapter 17, of Wendell's Blackstone: viz.; "And first with regard to the persons of infants, the Court having appointed a guardian of the person of the ward, either by its own authority or by recognising the testamentary or other guardian already lawfully appointed, proceeds to control and guide them in the exercise of their legal power over the person of the ward, prescribes its residence so that it may be kept within the jurisdiction, settles a scheme for its education, fixing even the place and mode of and the allowance for its education; regulates its choice of a profession or trade, or in marriage, and performs all the other duties of the guardians by nature and nurture.    On the other hand, with respect to the property of the wards of Court, the Court not only superintends the management, but enforces it; directs a proper settlement on marriage, &c.    This two-fold protection is granted even to infants unborn, &c.:" Note, Wendell's Blackstone, page 463, vol. 1; Com. v. Leeds, 1 *Rawle* 191.    The Orphans' Court have substantially the same power: 5th section, Act 29th March, 1832.    The Orphans' Court is a Court of Chancery, and within its jurisdiction proceeds on the same principles: 2 *Binney* 299, Guier v. Kelly; 3 *Ser. & R.* 539, Rex v. Rex; 4 *Barr* 116, Baker v. Williamson.

Complainant claims that not only was the Court below right in discharging Andrew Nicholson from the guardianship of two of the minors, but ought to have discharged him from the custody of the other three, and the Court is asked for such decree.    The testimony shows that Andrew Nicholson was not *of the same religious persuasion* with that of the father and mother of said minors, which is required by section 5 of Act 29th March, 1832: 1 *Dallas* 136, Graham's Appeal.

The opinion of the Court was delivered by

BLACK, C. J.—The appellant was guardian of five minor children.    Their father and mother were both dead, leaving them a small estate.    On the petition of their uncle to remove the guardian from his trust, the Orphans' Court did so, as to the persons of two of the children, and refused to remove him from the guardianship of the other three.

The Act of Assembly authorizes the removal of a guardian only in the case of mismanagement of the estate or misconduct in respect to the maintenance, education, or moral interests of the minor; and this must be regularly charged and satisfactorily proved.    But where the accusation has been formal, and the opportunity to answer full, the evidence taken in the presence of both parties, and decree of removal by the Orphans' Court on the merits of the cause, it would require a strong case in favor of the guardian to justify a reversal here.    This, we think, was a strong

E 2

[Nicholson's Appeal.]

case the other way. Though there is nothing before us which makes it necessary to believe that the appellant is other than a most conscientious and upright man, he seems to have utterly misunderstood his duty. It matters little to an orphan child whether his interests are sacrificed and his prospects blighted by well-meaning ignorance or by wilful malice. Either is within the definition of misconduct, a word which applies not to the motive but to the act.

The maternal relatives of these children offered to take them under their care, to educate them in the best manner, and maintain them during their nonage, free of all expense to their own estate; and, at their own maturity, to give them five hundred dollars each, if they should bid fair to do well. There is not the least reason to doubt that this offer was made in good faith; that it was prompted by affection, or, at the worst, by family pride; and that the parties making it were able as well as willing to perform their promise. It needed but little zeal in the guardian for the welfare of his wards, to make him seize such a proposal promptly and eagerly. But he preferred that they should remain in his own neighborhood, with no means of mental culture but what the free schools of the country afforded. His decision may have been caused by reluctance to part with them, by a desire to retain their services, or by the mistaken opinion that a thorough education would injure them. But either way he was wrong. His treatment of this offer was his principal error. His general demeanor towards them had a kindness in it which almost approached the confines of generosity. The rejection of clothing presented to one of them may have had its reason in principle as well as in feeling. The refusal to let her visit her relatives was probably, in his judgment, no more than what prudence required. The discretion which the law gives to guardians in such matters is not a narrow one. The work she did was no injury; for it would fit her all the better for the station of an uneducated woman, which her guardian intended her to occupy. They who learn nothing else should learn to labor.

The law which forbids the appointment of a guardian whose religious faith differs from that of the parents, should be most strictly obeyed whenever it is practicable, for reasons, so many and so obvious that they need not be repeated. But it is no cause for discharging one from a trust with which he is already clothed. A guardian can only be removed for mismanagement or misconduct, and certainly a man's religious opinions are neither the one nor the other. But if he should attempt, by any harsh or unfair means, to erase the impressions made by the parents on the mind of the child, and much more if he should put its conscience to any kind of torture, the law would not only justify but demand his removal. This disposes of the *first* error assigned.

[Nicholson's Appeal.]

The other two may be considered together. They amount to a complaint that Mr. Nicholson was removed from his guardianship over two of the minors, and not the other three, there being no reason for the distinction; and that he was not allowed to recover his costs from the opposite party. Perhaps it is somewhat surprising that he was not removed from the whole trust, and compelled to pay all the costs of the case. But this error, if it be one, was in his favor, and he of all men should let it rest quietly. We are asked by the appellees to make a decree now, removing the appellant from his guardianship of all the children. But we could not do this if we would, because there is no appeal by the petitioner. And we would not if we could, because there no error in the record, and a decision on the merits, by a court which had the parties before it, and heard the witnesses, is not to be disturbed for anything short of palpable injustice.

Decree affirmed.