[No. 28889. Department One. March 11, 1943.]

*In the Matter of the Estate of* ETHEL NELSON, *a Mentally Incompetent Person.*

ETHEL NELSON, *Respondent and Cross-appellant,* v. J. FRANK REDFIELD, *as Guardian, Appellant.*[1]

[1] Reported in 134 P. (2d) 935.

34

*Wright & Wright* (*A. J. Laughon,* of counsel), for appellant.

*Ray M. Wardall* and *Fred C. Campbell,* for respondent and cross-appellant.

STEINERT, J.—This appeal involves a controversy arising out of a guardianship proceeding. J. Frank Redfield, guardian of the estate of Ethel Nelson, an alleged mentally incompetent person, filed in the pending guardianship proceeding his final account, to which his ward, Ethel Nelson, filed her objections. At a hearing subsequently had, the superior court for Skagit county entered a decree adjusting and settling the final account; fixing the amount for which the ward should have general recovery against the guardian; ordering the return to her of certain personal and real property then in the possession or under the control of the guardian; and directing the latter to pay to the ward, within a prescribed time, the amount of cash belonging to the estate, as shown by the final account, and at the same time to deliver to her all personal property and surrender possession of all real property belonging to her. The guardian appealed from the entire decree,

and the ward cross-appealed from certain portions thereof. For convenience, we shall hereinafter refer to J. Frank Redfield as appellant, or guardian, and to Ethel Nelson as respondent, or ward.

The case presents the following facts: In April, 1939, the superior court for Skagit county entered an order adjudging respondent a mentally incompetent person and appointing appellant, her brother, guardian of her estate. That proceeding was instituted and carried forward by appellant without notice to respondent; nor was respondent present or represented at the hearing at which the court adjudicated her an incompetent and named appellant the guardian of her estate. Moreover, no guardian of her person has ever been appointed.

In August, 1940, respondent obtained counsel through whom she filed, in the guardianship proceeding, her independent petition asking that she be declared competent and that the guardianship be terminated or, in the alternative, that some person other than the appellant be appointed as guardian of her estate. Appellant appeared in response to that petition and joined issue thereon. After a hearing by the court, respondent's petition was denied. She thereupon appealed from the judgment of dismissal, and on February 6, 1942, that judgment was reversed by this court. *In re Nelson*, 12 Wn. (2d) 382, 121 P. (2d) 968. In its opinion in that case, this court, after discussing the evidence at length, concluded that the preponderance thereof was against the trial court's finding of mental incompetency, and held that the court below had erred in refusing to grant respondent's petition for the discharge of appellant herein as guardian of her estate and for the closing of the guardianship proceeding. In the concluding portion of its opinion, this court made the following statement, which has a direct bearing up-

on one of the questions involved in respondent's cross-appeal herein:

"On the oral argument [in the former appeal], respondent's [appellant's here] counsel stated that respondent [appellant here] desired no compensation for his services, and in our opinion he is not entitled to any."

Upon the filing of the remittitur on that appeal, the superior court for Skagit county on March 31, 1942, set aside its former judgment, and in lieu thereof entered judgment restoring respondent to full legal competency, directing appellant forthwith to make and file a full account of his proceedings as guardian and, upon the settling and approval of such account, to surrender to respondent all property to which she was entitled. The substituted judgment further ordered that respondent recover from appellant the sum of $230.65, the amount taxed as costs in this court on the former appeal.

Following the entry of the substituted judgment, appellant filed his final account in the guardianship matter on April 15, 1942, and respondent promptly filed her objections thereto. Hearing was had upon the account and objections, and on June 12, 1942, the trial court entered a decree settling the account; disallowing certain items charged against the estate by appellant; determining the total amount of money which appellant, as guardian and also as debtor on his promissory note, owed to the estate; and directing appellant to pay to respondent, or her attorneys, within three days, a specific sum representing the amount of cash in bank belonging to the ward, and at the same time to deliver to respondent or her attorneys all of the personal property of the estate, and also to surrender possession of her real property.

On June 15th, appellant moved for a new trial, and on June 18th, respondent procured an order directing

appellant to show cause why he should not be punished for contempt for failure to comply with the provisions of the decree of June 12th, particularly with respect to making the payment of cash and the delivery of property as therein required.

On June 29, 1942, a further hearing was had before the trial court, at which time appellant's motion for new trial was argued. It appears from the record that appellant's counsel was then insisting that the judgment of June 12th was erroneous in a number of respects, and that such errors could not be corrected merely by amending or modifying the original judgment, but only by entering a new one, after granting appellant's motion for new trial. Respondent's counsel took the contrary position, contending that the court could correct its former judgment by amendment if it saw fit to do so, instead of ordering a new trial and immediately thereupon entering a new decree. Appellant's counsel further stated to the court that he had no additional evidence to offer and would have no objection to the entry of a new decree immediately upon the granting of his motion for new trial. The trial court adopted that course, entered an order granting appellant a new trial, and immediately thereafter entered an "amended judgment and decree in guardianship." The appeal and cross-appeal herein are both directed against this amended judgment and decree. We shall refer to this decree in greater detail a little later.

At the hearing on June 29th, appellant also filed his special appearance and motion to quash the citation for contempt issued against him on June 18th. On July 2, 1942, the trial court granted appellant's motion to quash, on the ground that the order by which appellant in the meantime had been granted a new trial effectually disposed of the pending contempt proceeding. Respondent thereupon, on July 8, 1942, procured from the

court another order, similar to the one of June 18th, directing appellant to show cause why he should not be punished for contempt for failure to comply with the terms of the amended judgment and decree of June 29th.

On July 13th, appellant gave written notice of appeal from the last mentioned decree, and obtained an order of court fixing the amount of cost and supersedeas bond at eight thousand dollars. At the same time, appellant filed an affidavit in answer to the order to show cause directed against him on July 8th. In that affidavit, appellant admitted that he was able to comply with the terms of the amended decree, and alleged that in fact he had endeavored to deliver to the respondent, in person, a check for the required amount, but was refused admittance to the place where the respondent ward was then being kept. He further averred in the affidavit that the court had no jurisdiction to enter a decree directing payment of the money, or delivery of the personal property, to respondent's attorneys.

In response to appellant's affidavit, respondent's sister, Arlie R. Mowry, with whom respondent was then residing, filed an affidavit stating that at the time of appellant's visit to the home of respondent he merely inquired for the latter but did not state that he desired to pay any money or deliver any property to her. While the issues raised, or attempted to be raised, by appellant's affidavit and the answer thereto, have not as yet been passed upon by the trial court, they are here urged on the appeal by the guardian.

On July 15, 1942, appellant executed the required cost and supersedeas bond, and on July 28th, respondent in turn gave written notice of her cross-appeal from certain portions of the amended judgment and decree of June 29th, and thereafter posted the usual cost bond in the sum of two hundred dollars.

The amended judgment and decree, in so far as it need be considered upon this appeal and cross-appeal, disallowed certain charges totaling one hundred eighty dollars made by appellant against the ward's estate, as set forth in his final account; charged the account with $1,137.50 owing by appellant to respondent on his promissory note; approved, over respondent's objections, appellant's charges amounting to $410.24, for witness fees in the hearing on respondent's petition seeking restoration to competency and for costs of printing the guardian's brief on appeal to this court in that proceeding; allowed a general recovery against the appellant in the sum of $7,408.35, with interest at the rate of six per cent per annum from the date of the decree; and ordered the appellant to pay to respondent *or her attorneys,* within three days after the date of the last mentioned decree, the sum of $6,190.85, being the amount of cash in banks as disclosed by the final amended decree, and to deliver to respondent, within the time prescribed, all personal property and the possession of all real estate belonging to her.

We shall now consider the questions presented upon the appeal of the guardian. He first contends that the trial court erred in disallowing charges totaling ninety-eight dollars for appellant's "time loss" in attending to the affairs of the estate. By "time loss" he means the loss of wages which he otherwise would have earned in his regular employment. As shown above, at the oral argument upon the former appeal this appellant, through his counsel, stated that he desired no compensation for his services. This court not only took him at his word, but also declared in its formal opinion that he was not entitled to any compensation. Appellant now endeavors to draw a distinction between "compensation for services" and "time loss from payroll employment." The only distinction, however, is in

the use of words; the meaning and effect, under the facts here involved, are the same. Appellant is, in fact, now seeking to recover compensation measured by what he might have earned at his regular employment during the same period of time. The trial court properly refused to allow the charges.

Appellant next contends that the trial court erred in disallowing a charge of eighty-two dollars for "time lost in wages and compensation to C. C. Redfield [appellant's wife] for nursing [of respondent] on trip, Los Angeles and return." This charge might be said to be subject to the same objection as the charges previously discussed, for all these alleged services were rendered by the marital community composed of appellant and his wife, and the compensation therefor would in turn belong to the community, and, as such, would be covered by appellant's waiver of compensation. Aside ·from that, however, the alleged services performed by the wife were rendered prior to the appointment of the guardian, and no claim therefor was ever presented by her. Rem. Rev. Stat., § 1577 [P. C. § 9909], provides that no holder of a claim against an estate of a person under guardianship shall maintain an action thereon or "enforce the same," unless the claim shall have first been presented to the guardian. Expenses incurred before the appointment of a guardian are not a proper charge in the guardian's account, unless first presented to the court for allowance. *In re Wilber*, 151 Wash. 525, 276 Pac. 876.

At the final hearing, appellant and his wife testified that this charge was not actually for services rendered by the wife, but rather for wages paid to other persons while the wife was nursing the respondent. This change of front as to the nature of the charge, after a period of nearly three years, was of such dubious quality as to justify the trial court in disallowing that item.

Appellant's next assignment of error involves an alleged duplication in the amended decree, relating to the promissory note which appellant executed to respondent. However, in his reply brief, appellant concedes, after further reflection, that there was no duplication of that item in the decree. We therefore need not give this assignment of error any further consideration.

■■ Appellant's main contention upon the appeal is that the trial court erred when it directed in the amended decree that appellant should pay the money and deliver the property of the estate "to said Ethel Nelson, or her said attorneys." He contends that such provision is either void in its entirety or at least is so to the extent that it directs payment of money and delivery of property to the attorneys for the respondent. His argument is that the money and property constituted trust funds, to be preserved for the benefit of the respondent, and in order to terminate the guardianship relation and secure a release from his bond as guardian he is required by law to deliver the funds and property to the ward only, and not to her attorneys. We do not agree with this contention, under the facts of this case. Rem. Rev. Stat., § 130 [P. C. § 179], provides:

"An attorney and counselor has authority,—

"2. To receive money claimed by his client in an action or special proceeding during the pendency thereof, or after judgment upon the payment thereof, and not otherwise, to discharge the same or acknowledge satisfaction of the judgment."

The amended judgment and decree declared the respondent mentally competent and restored her right to the possession, control, and management of her property. From the time of the entry of that judgment and decree, respondent occupied the same relation to her attorneys as any other legally and men-

tally competent person would under normal circumstances. Besides restoring her competency, the decree also awarded her a judgment against the appellant, her former guardian, and directed him to surrender to her or her attorneys all of the property belonging to the estate then held by him. By the terms of the statute itself, respondent's attorneys had authority to receive the money and acknowledge satisfaction of the judgment. In our opinion, the statute also is broad enough in its intent and meaning to confer upon the attorneys the authority to receive property other than money, the possession of which had been adjudged to their client. *Ely v. Liscomb*, 24 Cal. App. 224, 140 Pac. 1086.

In *State ex rel. Lane v. Ballinger*, 41 Wash. 23, 82 Pac. 1018, 3 L. R. A. (N.S.) 72, this court held that, both under his general authority and under the provisions of the statute above quoted, an attorney employed by a guardian *ad litem* to prosecute an action for a minor has authority to receive payment of the judgment obtained by the attorney and enter satisfaction thereof. In discussing the authority conferred by the statute, this court said:

"It will thus be seen that the letter of the law most assuredly sustains the respondents' contention, for the statute especially clothes the attorney with authority, not only to satisfy the judgment, but to receive the money, and there is no limitation as to the character of the employment or the kind of clients."

Appellant cites a number of cases which hold that an attorney has no authority to consent to a judgment against his client, or waive any cause of action or defense in the case, or settle or compromise an action without special authority. We do not consider those cases in point here, for in this instance respondent's attorneys did nothing contrary or prejudicial to the

rights of their client. We conclude that the trial court committed no error in directing that the funds be paid and the property delivered to the respondent or her attorneys.

■ We take up, next, the matter of respondent's cross-appeal. Appellant has interposed a motion to dismiss the cross-appeal, on the ground that it was not taken within ten days after the date of the appeal perfected by appellant. It will be recalled that appellant gave notice of his appeal on July 13, 1942, and that respondent gave notice of her cross-appeal on July 28th. A period of fifteen days thus elapsed between the two dates. Rem. Rev. Stat., § 1720 [P. C. § 7294], on which appellant relies, reads in part as follows:

"All parties whose interests are similarly affected by any judgment or order appealed from may join in the notice of appeal whether it be given at the time when such judgment or order is rendered or made, or subsequently; and any such party who has not joined in the notice may at any time within ten days after the notice is given or served, serve an independent notice of like appeal, or join in the appeal already taken by filing with the clerk of the superior court a statement that he joins therein or in some part thereof, specifying in what part. Any such party who does not so join shall not derive any benefit from the appeal unless from the necessity of the case; nor can he independently appeal from any judgment or order already appealed from, more than ten days after service upon him of written notice of the former appeal, unless such former appeal be afterward dismissed. . . ."

The language above quoted has reference solely to parties "whose interests are similarly affected by any judgment or order appealed from," and not to parties *dissimilarly affected thereby*. Appellant concedes this to be true with reference to that portion

of the statute preceding the words "nor can he independently appeal." It is his contention, however, that the last clause of the statute fixes an absolute limit of ten days for *any* further notice of appeal, whether the parties be similarly or dissimilarly affected by the judgment or order from which the appeal is taken. Such a construction of the statute would mean that one who otherwise has thirty days within which to appeal would be limited to eleven days if another litigant, dissimilarly affected by the judgment, should take an appeal on the day the judgment is entered. In our opinion, neither the letter nor the spirit of the statute calls for such an interpretation, and we decline to place that construction upon it.

Appellant contends, further, in this connection, that regardless of the interpretation to be given the statute, he and the respondent are parties whose interests are *similarly* affected by the judgment and decree. We dispose of this contention by simply saying that the facts as hereinbefore stated afford a clear demonstration that the interests of the two parties herein are not similarly affected but, on the contrary, are diametrically opposed to each other. The motion to dismiss the cross-appeal is denied.

We will now consider the assignments of error presented by the respondent. She first contends that the trial court erred, in its amended judgment and decree, in allowing the guardian credit in the sum of $410.24 for witness fees and cost of printing briefs in defending the ward's action to set aside the guardianship. It will be recalled that in her petition respondent asked that the guardianship be terminated or, in the alternative, that some person other than appellant be appointed as her guardian. Thus, in either event, the removal of the appellant as guardian was sought. He, however, resisted the petition in its entirety, and

the proceeding became a highly adversary one. In its opinion in the former appeal, this court declared (1) that a guardian should not have been appointed at all until and unless the alleged incompetent were present in court or her absence satisfactorily explained; (2) that the petition for the removal of the guardian should have been granted; and (3) that, under the facts shown, the guardian was not entitled to compensation.

We believe that the opinion in the former appeal, as well as the facts as they have heretofore been narrated, compel the conclusion that appellant should not have been allowed credit for witness fees and cost of printing briefs on appeal, in a proceeding so highly adversary as this one has been. The authorities touching this question hold generally that where a guardian is removed for cause he is personally taxable with costs and will not be allowed a credit therefor on accounting, and that only when he acts in good faith and with reasonable discretion in resisting the application for his removal will he be allowed the expense incurred in connection therewith, against the estate of the ward. *Bernhamer v. Miller,* 114 Ind. 501, 17 N. E. 115; *Dearborn v. Batten,* 64 N. H. 568, 15 Atl. 149; *In re O'Neil,* Tuckers Surr. Rep. (N. Y.) 34; *Silver's Estate,* 6 Pa. Dist. 267; *Nicholson's App.,* 20 Pa. 50; 28 C. J. 1108, Guardian and Ward, § 167.

Respondent next contends that the court erred in refusing to charge the guardian with the judgment for costs taxed against him in the former appeal, amounting to $230.65. For the reasons already stated with reference to the preceding item, and upon the authorities previously cited, we hold that the court should not have allowed appellant credit for the amount of the judgment for costs.

Respondent's next assignment of error relates to a mistake of computation in fixing the amount of the money judgment against appellant at $7,408.35. Appellant does not dispute the error in calculation, and our study of the figures convinces us that the amount, if correctly computed, should have been $7,508.35. To this amount, there should now be added the items of $410.24 and $230.65, with interest at the rate of six per cent per annum on $230.65 from March 10, 1942, which is the date of the judgment for costs in the former appeal.

Respondent finally contends that the trial court erred in granting appellant a new trial after entry of the judgment and decree on June 12, 1942, and in refusing to punish appellant for contempt for failure to comply with the terms of that decree. Inasmuch as we are now making a complete disposition of this case, it will not be necessary to pass specifically upon these last mentioned contentions.

The amended judgment and decree of June 29, 1942, will be affirmed upon the appeal of the guardian and will be modified upon the cross-appeal of the ward to the extent above indicated, with direction to the trial court to modify that decree accordingly on receipt of the remittitur herein. In view of the length of time already consumed in winding up the guardianship proceeding, the remittitur will be forwarded immediately, and appellant will be allowed ten days from the date of its receipt by the superior court within which to comply with the amended decree and judgment as herein modified. Respondent will recover her costs against the appellant individually.

SIMPSON, C. J., MILLARD, BLAKE, and JEFFERS, JJ., concur.