453 So.2d 441 (1984)
WEBSTER & MOOREFIELD, P.A., Garth A. Webster and Harry A. Ahlman, Appellants,
v.
CITY NATIONAL BANK OF MIAMI, As Successor Guardian of the Property of Mary C.W. Hand; Alice Frances Wolf, Next of Kin to Mary C.W. Hand, Appellees.
Nos. 83-1197, 83-1224.
District Court of Appeal of Florida, Third District.
July 10, 1984.
*442 Webster & Moorefield, Cristol, Mishan & Sloto and Julie Feigeles and Garth Webster, Miami, for appellants.
Paul, Landy, Beiley & Harper and Robert M. Sondak, Miami, for appellees.
Before BARKDULL, BASKIN and FERGUSON, JJ.
FERGUSON, Judge.
Appellant, Harry A. Ahlman, seeks review of an order which requires that he (1) return a "gift" received from his former ward, (2) reimburse the ward's estate for certain expenses, and (3) pay his own attorney's fees in connection with the defense of a petition for his removal as voluntary guardian of the ward. His attorneys have joined in this appeal on the third point. Alice Francis Wolf, niece of the deceased ward, cross-appeals from those parts of the order awarding a guardian fee to Mr. Ahlman, and refusing to compel Mr. Ahlman to *443 reimburse the estate for attorney's fees already paid without prior court approval.
Mr. Ahlman, a forty-one-year-old unmarried interior decorator, befriended the ninety-five-year-old Mary C.W. Hand, a widow living on Miami Beach. On September 22, 1980, the trial court granted Mrs. Hand's petition to appoint Mr. Ahlman as voluntary guardian of her property. The order of appointment was entered on October 2, 1980. On October 17, 1980, letters of guardianship issued.
On November 4, 1980, Mrs. Hand suffered a severe stroke. Her niece, Mrs. Wolf, petitioned the court on November 9, 1980, to remove Mr. Ahlman as voluntary guardian pursuant to Section 744.474, Florida Statutes (1983), alleging fraud, abuse of powers, and waste, embezzlement, or mismanagement of the ward's property. The niece subsequently filed both a petition for determination of Mrs. Hand's competency and a petition for the appointment of a guardian of the person and property of Mrs. Hand under Sections 744.331 and 744.334. On April 28, 1981, the trial court adjudicated Mrs. Hand incompetent and terminated Mr. Ahlman's appointment as voluntary guardian as of April 21, 1981, the date of the hearing. Mr. Ahlman appealed his termination. This court affirmed. Ahlman v. Wolf, 413 So.2d 787 (Fla. 3d DCA 1982). After mandate issued, Mr. Ahlman and Mrs. Wolf filed various motions in the trial court. This appeal is brought from the rulings on those motions.
First, Mr. Ahlman contends that the trial court erred in ordering him to return a $25,000 "gift" received from the ward on October 16, 1980. The trial court found that Mr. Ahlman accepted the gift "at a time when he was guardian and legally incapable of receiving a gift from the ward." Mr. Ahlman argues that he was entitled to accept the gift at that time because letters of guardianship had not yet issued. We disagree. A guardianship becomes effective when the order of appointment is entered, see Section 744.344, and the failure to issue letters of guardianship does not affect the validity of that order. § 744.313. Because Mr. Ahlman was the guardian of Mrs. Hand's property at the time he received the $25,000, he was, as the trial court found, legally incapable of accepting the gift. See § 744.441(17) (involuntary guardian may make gifts of ward's property to members of ward's family only upon court approval); see also § 744.341(2) (voluntary guardian has same duties and responsibilities as involuntary guardian of property).
Further, the ward was without the capacity to convey her property to the guardian as a gift. We reject the guardian's contention that pursuant to Section 744.341(1),[1] a ward may be competent to give her property to the guardian as a gift, without court approval, even though senility has rendered her incapable of managing her estate. The statutory requirement that the petitioner for a voluntary guardianship understand the nature of the relationship and the delegation of power over her estate does not mean that the petitioner-ward has the capacity to resist improper influence and otherwise act intelligently in caring for her property.
The guardian's argument on this point defies the entire statutory scheme. The guardian's general duties are defined in Section 744.377, and other statutes detail specifically what the guardian may do with *444 respect to the ward's property with court approval, Section 744.441, and without court approval, Section 744.444. Certainly if a nonrelated guardian is forbidden to borrow or purchase from the ward, Section 744.454, it goes without saying that a nonrelated guardian cannot take or accept the ward's property and claim it as a gift. The trial court correctly ordered Mr. Ahlman to return the $25,000 to Mrs. Hand's estate.
Next, Mr. Ahlman challenges that portion of the lower court's order which directs him to reimburse the estate for damages incurred in connection with an attempted sale of the ward's personal property. The court found that he wrongfully contracted to sell furniture from Mrs. Hand's New Jersey home to a New York auction house, in violation of the explicit terms of the guardianship order and without court approval. Mr. Ahlman argues that the arrangements for the sale began at Mrs. Hand's insistence, prior to the voluntary guardianship. The undisputed facts, however, are that Mr. Ahlman gave the "go-ahead" to the auction house on November 30, 1980, after the guardianship had commenced. Yet, Mr. Ahlman did not petition the court for approval until December 8, 1980, and again on January 16, 1981. The court denied both petitions. Under Section 744.441(12), a guardian may sell the personal property of the ward only with the approval of the court. The damages, which consisted mainly of transportation and storage charges and also included costs and attorney's fees incurred in resolving the dispute that followed, were properly taxed against Mr. Ahlman.
Third, Mr. Ahlman and his attorneys appeal the trial court's denial of attorney's fees incurred in defending against Mrs. Wolf's petition to remove Mr. Ahlman as voluntary guardian. Mr. Ahlman had petitioned the court for approximately $18,000 in attorney's fees after the disposition of his first appeal. Prior to the appeal, Mr. Ahlman wrote checks from the guardianship estate totalling $34,586 for attorney's fees and $1,197 for costs. Mrs. Wolf, on her cross-appeal, contends that the trial court should have ordered Mr. Ahlman to reimburse the estate for the fees and costs paid earlier, claiming that a guardian may not recover fees for defending against a removal petition. The trial court found that the amount paid to the attorneys for services rendered prior to the earlier appeal represented the fair value of services which benefitted the guardianship estate, and that the additional unpaid sums requested by Mr. Ahlman were for services which did not benefit the estate.
A guardian who, in good faith, defends against a removal petition, may be awarded expenses to include costs and attorney's fees. Dearborn v. Batten, 64 N.H. 568, 15 A. 149 (1888); In re Nelson's Estate, 17 Wash.2d 33, 134 P.2d 935 (1943). See also Stabinski v. Meyer, Weiss, Rose, Arkin, Shampanier, Ziegler & Barash, P.A., 439 So.2d 330 (Fla. 3d DCA 1983) (guardian is entitled to attorney's fees from trust consisting of former guardianship assets for defending against petition alleging mismanagement of ward's assets where petition was substantially without merit; contrary holding would require guardian to defend claims relating to his fiduciary capacity at his own expense). In this case, the trial court found that attorney's fees and costs already paid from the estate by Mr. Ahlman were for a good faith defense of the removal petition. In refusing to award the additional fees requested by Mr. Ahlman, however, the trial court implicitly found a lack of good faith in defending the removal petition after the ward had become incompetent. A trial court has broad discretion in determining the amount of attorney's fees to be awarded. Tietig v. Kusik, 279 So.2d 890, 891 (Fla. 3d DCA 1973). Here, neither party has carried their burden of showing that this discretion has been abused.
Finally, Mrs. Wolf cross-appeals the award of $10,000 to Mr. Ahlman for services performed as guardian. We find no clear showing of abuse of discretion and affirm the award. We remand, however, for the limited purpose of clarifying the *445 order to reflect whether this sum is to be offset by (1) any part of the fees paid by Mr. Ahlman to himself for his duties as social secretary during the seven months that he also acted as guardian, and (2) the amount Mr. Ahlman owes the estate for damages incurred in the attempted sale, without court approval, of Mrs. Hand's personal property.
Affirmed and remanded for clarification.
NOTES
[1] Section 744.341(1), Florida Statutes (1983) states:

(1) Without adjudication of incompetency, the court shall appoint a guardian of the estate of a resident or nonresident person who, though mentally competent, is incapable of the care, custody, and management of his estate by reason of age or physical infirmity and who has voluntarily petitioned for the appointment. The petition shall be accompanied by a certificate of a licensed physician that he has examined the petitioner and that the petitioner is competent to understand the nature of the guardianship and his delegation of authority. Notice of hearing on any petition for appointment and for authority to act shall not be required, except that notice shall be given to the ward and to any person to whom the ward requests that notice be given. Such request may be made in the petition for appointment of guardian or in a subsequent written request for notice signed by the ward.