# IN RE: GUARDIANSHIP OF BETTY V. CHADWICK, Incompetent

## Case No. 84-3181 CP

Fifteenth Judicial Circuit, Palm Beach County

December 18, 1986

## APPEARANCES OF COUNSEL

**Robert K. Kogon** for ward and guardian of the property.

## OPINION OF THE COURT

VAUGHN J. RUDNICK, Circuit Judge.

### ORDER SETTING FEES FOR ATTORNEY AND FEES FOR GUARDIAN

The petition authorizing payment of attorney and guardian fees came before the court upon a full evidentiary hearing pursuant to this court's order dated October 3, 1986, wherein the court appointed a guardian ad litem to represent Betty V. Chadwick, the ward.

The issue the court is called upon to resolve is as follows:

In a voluntary guardianship proceeding, pursuant to F.S. 744.341, must the court approve the payment of fees for the guardian and his attorney when the ward agrees and consents to them?

The court, for the reasons enunciated below, rules it is not so bound.

Betty V. Chadwick, born in 1912, petitioned this court for a voluntary guardianship in October of 1984, and pursuant to her petition an order was entered by the court appointing Robert K. Kogon, *attorney*, as guardian of her property, as the ward was a physically incapacitated person by reason of age or physical infirmity. Letters of Guardianship were issued October 9, 1984.

In August of 1986, Mr. Kogon petitioned the court for the payment of fees, both guardian's and attorney's, for himself. These fees were based upon 162.5 hours of effort billed at $125 per hour during the period April 1, 1985, to April 2, 1986.

Mr. Kogon sought the payment of $20,312.50 and attached to his petition was an affidavit of a Florida attorney reflecting such payment is a reasonable fee for services rendered "as attorney in the above styled action on a quantum meruit basis considering the work he performed and the nature and quantity of the assets he is responsible for." Also attached to the petition was a consent by the ward to the fees being charged.

A review of the time and effort expended clearly reflects the overwhelming majority of time devoted to the ward related to matters of a nonlegal nature, which in this jurisdiction are usually compensated at the rate of somewhere between $10 and $25 per hour by persons who are not members of the ward's family.

The court found the petition for fees, on its face, reflected the guardian is, or may be, interested adversely to the ward, or is enforcing his own claim against the estate of the ward and based thereon appointed Robert Springer, attorney, as guardian ad litem on behalf of Betty V. Chadwick, the ward, for proper presentation of this matter to the court upon full hearing as to the reasonableness of fees to be charged by the guardian when performing guardianship services, and as an attorney when performing legal services.

For the purposes of this order, the court sets forth how much of the time was utilized by the guardian in the performance of his duties for which he seeks court approval of $125 an hour:

Paying bills

balancing checking accounts

picking up the mail

conversing with the ward

test driving her car

having car filled with gasoline

traveling to the bank

wash/wax and correct idle to the car

install shower massage

purchased a toaster

repaired vacuum cleaner

installed new car cover

lunches with the ward

arrange nurses schedules

hiring private nurses and aides

shopping at the grocery store

and enumerable errands.

The list of chores performed is extremely detailed and length, but a sampling of that which confronts the court is as follows:

April 29, 1985—Took Cadillac for repair to front end; wash, wax, correct idle; delivered money, met with Betty (and) met with live-in in office—4.5 hours

September 6, 1985—Paid bills, balanced accounts, delivered money, picked up mail, took Betty to lunch, drove her Cadillac; discussion with snow birds as to why they could not use Betty's car, went over some new investments—4 hours

March 15, 1986—Delivered money, picked up mail, paid nurses, took Cadillac and Betty and head nurse to lunch—2.5 hours

Upon the evidentiary hearing, the guardian ad litem represented to the court he had been in contact with the ward's only relative who has also been declared incompetent; that he personally talked to Betty V. Chadwick and was of the opinion she was perfectly competent; discussed the fee arrangement she had made with the guardian; ascertained she specifically approved of it and was rather upset that the court would question the fee, taking the position if the court did not approve it, she would pay it anyway. After his discussions with her he was completely satisfied the ward was mentally competent.

74

At the hearing, the guardian ad litem brought forth a witness, Robert Sorgini, attorney, to render an opinion as to what he considered to be a fair fee under the circumstances of this case and who has a great deal of experience in guardianship matters, both voluntary and involuntary, within Palm Beach County. His testimony reflected this ward was excessively demanding, difficult to work with and it was virtually impossible for a lawyer to undertake such a matter and be adequately compensated as an attorney, while at the same time fulfilling his role as the guardian. The witness tendered an opinion to the court, under these circumstances it would be reasonable for the guardian of the property to charge a monthly fee of approximately $500 and charge separately for legal services rendered. He further opined to the court the guardian's efforts in this cause was admirable and the estate increased by approximately $200,00 during its existence.

Mr. Kogon, the guardian, presented his testimony before the court which was also submitted in written form and admitted into evidence. His testimony briefly reflected, the ward, though mentally competent, was a very confused person as to how to handle money and financial affairs. She was unable to balance a check book, write checks properly and basically had no control of her money; duties which descended upon her when her husband died shortly before the voluntary guardianship was instituted. She did not trust other persons; she had an attorney and priest help her in many matters following her husband's death, both of whom she soon distrusted and discharged. Mr. Kogon testified he befriended her; convinced her of his integrity, honesty and background in these matters and she agreed to allow him to handle all of her affairs pursuant to the voluntary guardianship. Mrs. Chadwick understands his fee, and voluntarily consented to it.

In regard to the non legal tasks he performed, he maintained Betty Chadwick understood she wanted him to do these things for her, and she paid him to take care of her. She expected him to be there on a weekly basis, whether to pick her up and take her to lunch, or stop by and visit, pick up her mail, pay her bills and reassure her of these things. She expects all this from him and she knows she is paying for them.

The question presented to the court appears to be one of first impression, although there is a body of decisional law presently existing in the State of Florida in support of the court's ultimate conclusion.

Free enterprise is the very basis upon which our business and social system is built and if this were not a formal court proceedings, pursuant to legislative enactments, Mrs. Chadwick would be free to

pay Mr. Kogon any sums of money she so desired for performing the duties set forth in his petition for fees. Passing upon the wisdom and extent of her willingness to pay, be if somewhat lavish or eccentric, is not the concern of the court, nor should it be, BUT SUCH IS NOT THE CASE PRESENTLY PENDING BEFORE THIS COURT.

The Legislature of the State of Florida specifically set forth how guardians are to be paid and one finds in F. S. 744.108, Guardians Fee, the following:

"A guardian of the person or of the property shall receive *a reasonable fee* for his services *to be fixed by the court* after such notice as the court shall require." (emphasis supplied)

Florida Statute 744.424, Attorneys Fees and Expenses (3):

"If the guardian is a practicing attorney at law in this state and has rendered legal services in connection with his guardianship duties, he shall be allowed reasonable fees *in addition* to his expenses and compensation provided by law for him as guardian." (emphasis supplied)

Our highest legal tribunal has addressed the question of attorney's fees for personal representatives which is analogous to those fees paid to guardians and our highest tribunal stated:

"Attorneys who are called upon by personal representatives to perform nonlegal services for the estate should, in order to protect their right to compensation, make clear to the personal representative that he must pay the attorney for such work out of the compensation allowed the personal representative and that it cannot be charged against the estate as legal services.

We realize that few attorneys will do this for fear of offending the personal representative who engaged them, but that is a matter for those so situate to solve between themselves." In re: Liebers Estate, 103 So.2d 192 (Fla. 1958); Heirs of The Estate of Waldon v. Rotella, 427 So.2d 261 (Fla. 5th DCA 1983).

The Fourth District Court of Appeal, in *The Century National Bank of Broward v. Bryan*, 468 So.2d 243 (Fla. 4th DCA 1985), a case of first impression, ruled a voluntary ward is legally unable to convey his property, whether by gift or otherwise, without court approval. Judge Downey, in his survey of the law in this area, together with his colleagues, came to the following conclusions:

"As a result of our research on the subject, we believe the statutory scheme adopted in Florida renders a voluntary ward legally unable to convey his property, whether by gift or otherwise, without

approval of the court. . . Implementation of the statutory requirements would be nigh impossible if a voluntary ward could willy-nilly transfer his property as freely as though he were not involved under the protective supervision and control of the court as provided in the guardianship statutes generally.

\* \* \*

'If a voluntary conservatee, not mentally incapacitated, were to be given an unbridled power to contract or deed away his property *inter vivos*, the voluntary conservator-ship would seldom be used because the relatives of the elderly person seeking to protect the loved one from his own or her own actions would, of necessity, utilize the compulsory conservatorship procedure. Hence, the old folks would in most instances be required to spend their golden years branded as 'incapacitated' or 'incompetent'.'

It is not as though entering upon such a proceedings locks a ward into this state of incapacity forever. If the ward eventually determines that he no longer needs or wants the assistance and supervision of the voluntary guardian and the court, he can petition the court to terminate the proceeding. . . The entire basis of such a proceeding as created by Sec. 744.341 is the capacity of the ward who is therefore statutorily required to be 'mentally competent', voluntarily to petition for its institution, to designate the guardian, and it necessarily follows, to secure the discontinuance of the guardianship at his request.

Furthermore, as an alternative to a voluntary guardianship, a person could simply execute a power of attorney and enable some trusted person to handle most of his affairs." See also the case of Webster & Moorefield, P.A. vs. City National Bank, 453 So.2d 441, (Fla. 3d DCA 1984)

For this court to approve the fees as set forth in the petition, is to create legal precedent upon which other persons may rely in this area of the law. The court chooses not to so do. The Legislature has set forth the duty of this court. It is for the court to determine what is, or what is not, reasonable and based on such findings, fix fees, both for the guardian and attorney representing the guardian.

Based upon the foregoing findings of fact and law, it is

ADJUDGED:

1. Robert K. Kogon, acting as guardian of the property, expended 141.75 hours and the court fixes a reasonable fee for those efforts of $6000. In setting this fee, the court has considered the estate assets of

approximately $828,000, together with the guardian's corresponding efforts and responsibility attendant thereto.

2. Robert K. Kogon expended 24.75 hours acting in his capacity as an attorney and the court awards a reasonable fee of $125 an hour for these services, for a total amount of $3,093.75. The court awards Robert K. Kogon for legal services rendered to the ward the sum of $3,100.

3. Robert K. Kogon has paid himself, pursuant to his accounting and petition for attorney and guardian fees during the period of time from April 1, 1985 through April 2, 1986, the sum of $6,000, and an additional $600 fee for preparing tax forms. Hence, he is due an additional $2,500 for services rendered to the ward during the time period set forth in his petition for fees.

4. Richard W. Springer, as Guardian Ad Litem appointed by the court is discharged. He shall be paid a fee of $575 for his services in this matter, together with court costs in amount of $20 for the court reporter retained for the hearing held in this matter. The guardian of the property shall pay these fees and costs forthwith.

5. Robert Sorgini, attorney, as an expert witness testifying in this matter shall be paid the amount of $250. The guardian of the property shall pay this fee forthwith.

Ordered December 18, 1986 at West Palm Beach, Palm Beach County, Florida.