498 So.2d 868 (1986)
Reed A. BRYAN, III, et al., Petitioners,
v.
CENTURY NATIONAL BANK, et al., Respondents.
No. 67186.
Supreme Court of Florida.
November 13, 1986.
Rehearing Denied January 5, 1987.
*869 Reed A. Bryan, III, in pro. per., of McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, and Larry Klein and John Beranek of Klein & Beranek, P.A., West Palm Beach, for petitioners.
Kenneth R. Mikos of Friedrich, Blackwell, Mikos & Ridley, P.A., Fort Lauderdale, and Thomas M. Ervin, Jr. of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for Century Nat. Bank of Broward.
H.T. Maloney of Patterson & Maloney, Ft. Lauderdale, for James H. Bryan, Sr., Stuart Bryan and Lucy Gardner Owens.
ADKINS, Justice.
We have for review Century National Bank v. Bryan, 468 So.2d 243 (Fla. 4th DCA 1985), in which the Fourth District found ineffective a deed executed by a competent ward in a voluntary guardianship in the absence of court approval by the probate court. We find conflict with Fleming v. Fleming, 352 So.2d 895 (Fla. 1st DCA 1977), cert. denied, 367 So.2d 1123 (1979), holding that a deed by even an adjudicated incompetent was only voidable and not void. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. As more fully expressed below, we agree that court approval of transactions involving property surrendered to the control of a voluntary guardian must be obtained, but find that in this case sufficient court approval was obtained.
Prior to analyzing the statutory provisions involving voluntary guardianships, we turn to the facts of the case. In 1977, ninety-eight year old Camille Perry Bryan petitioned the probate court for appointment of a voluntary guardian under section 744.341, Florida Statutes (1977). Although mentally competent, Camille sought assistance in "the care, custody and management of [her] estate by reason of age or physical infirmity." § 744.341(1). Respondent Century National Bank (CNB) acted as guardian until the ward's death in 1981. While the voluntary guardianship remained in effect, in May 1980, petitioner Reed Bryan, III (Bryan) prepared and had Camille simultaneously execute to him a warranty deed to her residence and a petition for an order confirming the sale.
*870 No question exists that Camille fully intended that Bryan acquire the home through the part sale/part gift transaction. She desired to keep the property in her family, and had in her will devised it to Bryan's father, who predeceased her. She also stated an intention to lessen estate taxes by transferring the home inter vivos as part of an estate planning procedure. Out of concerns of fairness to the other heirs, Camille and Bryan agreed that he would pay $100,000 for the home, a portion of its value.
CNB, as voluntary guardian, joined Camille in executing the petition seeking confirmation of the sale, and it was filed before the guardianship court. Although apparently the trust committee at CNB desired the heirs' consent to the transaction prior to the filing of the petition, three of eight heirs had not consented at that time. While CNB, the nominal petitioner seeking confirmation of the sale, assumed a neutral position during the proceedings, these heirs, now respondents, objected to the transfer. Before the petition could be ruled upon, Camille died. Subsequently, upon CNB's petition, an order was entered terminating the guardianship. The judge expressly noted that it left unresolved the questions raised by the petition, and found the issue "moot as far as this guardianship is concerned."
The remaining proceedings took place in the civil division of the circuit court rather than the probate division. In November 1981, petitioner Bryan instituted a quiet title action against CNB, now acting as personal representative of Camille's estate, and other interested parties, heirs under the residuary clause of Camille's will. CNB argued that the transfer had been ineffective absent court approval, and through counterclaim sought to quiet title to the property in favor of the estate and its heirs. Certain heirs, who had not consented to the transfer, additionally counterclaimed on grounds of undue influence and unclean hands.
The trial court granted Bryan a summary judgment, holding that in the absence of any findings of incompetence, the legislature had not intended to deprive a voluntary ward of the power to dispose of his or her property. Subsequently, the court found that Bryan had successfully rebutted a presumption of undue influence, and that the affirmative defense of unclean hands had not been established.
Upon appeal, the Fourth District reversed as to the deed's validity but affirmed the findings of no undue influence. Holding that "the statutory scheme adopted in Florida renders a voluntary ward legally unable to convey his property, whether by gift or otherwise, without approval of the court," 468 So.2d at 245, the Fourth District found the transfer ineffective.
While we agree with the Fourth District as to the necessity of obtaining court approval of the deed, we note some confusion in the opinion based on the court's failure to adequately distinguish between voluntary and involuntary guardianships. The problem, in part, lay in the statute's lack of guidance in setting forth the law of voluntary guardianships. The statute before the court, section 744.341, Florida Statutes (1979), included a provision in subsection (2) that "[a]ny guardian appointed under this section shall have the same duties and responsibilities as are provided by law as to guardians of property generally." While this provision provided a voluntary guardian with a general understanding of his duties, it failed to acknowledge even the most basic distinction between voluntary and involuntary guardianships.
The most basic distinction, of course, involves the competency of the ward. While an involuntary guardianship requires an adjudication of incompetency, section 744.331, Florida Statutes (1985), the voluntary scheme requires an affirmative finding of competency. § 744.341(1). In citing precedent such as Webster & Moorefield, P.A. v. City National Bank, 453 So.2d 441 (Fla. 3d DCA 1984), for the proposition that the ward in a voluntary guardianship lacks the capacity to make a gift, the Fourth District failed to point out a crucial distinction between *871 that case and the one at bar: the ward's competency. In Webster, the Third District noted that "[w]e reject the guardian's contention that [in a voluntary guardianship] a ward may be competent to [make] a gift, without court approval, even though senility has rendered her incapable of managing her estate." 453 So.2d at 443. No similar contention exists in the instant case.
Another important distinction is the lack of a requirement of notice to interested third parties. No basis existed for CNB's insistence upon obtaining the consent of Camille's heirs prior to seeking validation of the transfer, as the ward had not requested that they be notified. § 744.341(1).
Finally, the district court opinion improperly noted that "[w]e think it most appropriate that the Bank signed a petition along with Camille, in which it was alleged that Camille wanted [Bryan] to have this property and that the transfer was being contemplated as an estate planning procedure. Section 744.441(17) provides expressly therefor." 468 So.2d at 245. We disagree. Section 744.441(17) involves powers of the guardian, not the ward. Upon obtaining court approval, a guardian may "[m]ake gifts of the ward's property to members of the ward's family in estate and income tax planning procedures." This provision is based upon the ward's presumed total incapacity to effectively deal with his or her property, and may not be applied as simply to the instant facts. We here deal with a ward's gift, not a guardian's. Nowhere in the statutes is court approval specifically called for in order to validate a conveyance by a mentally competent individual.
We think, however, that the statutory scheme is best interpreted in such a manner as to require such court approval. The parties strongly disagree as to the functions of and the policy involved in the statute. Petitioner Bryan argues that the district court's decision would unfairly discriminate against Florida's elderly by deeming even the mentally competent incapable of effecting valid transfers. He points out that the decision under review treats voluntary wards in a harsher manner than those adjudicated incompetent, as the latter may execute a deed which is only voidable rather than void. Fleming.
Respondent CNB, on the other hand, contends that the statute mandates protection for those "incapable of the care, custody and management of [their] estate(s) by reason of age or physical infirmity," section 744.341(1), and that reversal of the opinion below would render the elderly vulnerable to those seeking to prey upon the weak.
Recognizing the merit in each position, we conclude that the competing interests in protecting the elderly or physically infirm and in preserving their dignity are best resolved by requiring court approval of transactions involving property which has been surrendered to the guardian's control. In considering the question, we must examine subsection (2) of the statute as presently amended. It provides as follows:
If requested in the petition for appointment of a guardian brought under this section, the court may direct the guardian to take possession of less than all of the ward's property and of the rents, income, issues, and profits from it. In such case, the court shall specify in its order the property to be included in the guardianship estate; and the duties and responsibilities of the guardian appointed under this section will extend only to such property.
The amendment, we believe, reflects a recognition of the ward's competency in a voluntary guardianship. In the involuntary guardianship, predicated upon an adjudication of incompetency rendering the ward presumably "incapable of managing his own affairs or of making any gift, contract, or instrument in writing that is binding on him or his estate," section 744.331(8), the guardian "shall take possession of all of the ward's property ..." § 744.377(3).
The voluntary guardianship statute as amended, in contrast, contemplates a cooperative relationship between guardian and ward, in force solely for the ward's convenience *872 and only so long as the ward should desire. Ahlman v. Wolf, 413 So.2d 787 (Fla. 3d DCA 1982). The petition for appointment of a voluntary guardian must be accompanied by a physician's certification that the ward is competent to understand the nature of the guardianship and the delegation of authority involved. Clearly, the parties involved are free to determine the extent of the delegation desired, and may establish for themselves the quantum of protection to be afforded by deciding which property shall be placed in the guardian's care and which shall be retained by the ward.
We seek to preserve the flexibility of the statutory scheme in order to interpret the plan in a workable fashion. Such flexibility is essential, we believe, in order to make available court protection for those who need or desire such protection without having to be adjudicated incompetent. We find unsatisfying the district court's observation that "as an alternative to a voluntary guardianship, a person could simply execute a power of attorney and enable some trusted person to handle most of his affairs." 468 So.2d at 247. While a power of attorney may indeed be useful in certain circumstances, we find that the central value of a voluntary guardianship lies in the availability of desired court supervision without a finding of mental incompetency.
The parties involved may, as now provided in subsection (2), request in the initial petition that the guardian take control of only part of the ward's property. The court then specifies in its order the agreed-upon division of control of the ward's property. The guardian remains accountable to "render a full and correct account of the receipts and disbursements of ... his ward's property" annually under section 744.427 only for that property placed in his control, and he is otherwise bound as to that property under ordinary principles of guardianship. In dealing with that property, then, he must obtain court approval if required by section 744.441, and may act in its absence if so permitted under section 744.444.
In order to interpret the statute in such a manner as to protect the ward, we hold that he or she may not freely deal with that property which has been placed in the guardian's control in the absence of court approval. The ward may, of course, deal with or dispose of any property left in his control without fear of later judicial invalidation.
As an alternative to allocating control of the property in the initial petition, the parties may at any time reassess their positions and place more or less property under the guardian's control. In this case, for instance, CNB filed a petition in 1977 stating that the ward was capable of managing certain accounts and obtained court approval allowing her to maintain a checking account and an expense account, as well as to retain possession and control of certain valuable jewelry. We point out this alternative in order to make clear that the relationship between guardian and ward need not be frozen as charted out in the initial petition.
As stated above, the voluntary guardianship statute emphasizes a flexible relationship involving cooperation and teamwork between the parties involved. In order to have cooperation, of course, there must first be communication; section 744.341(1) requires notice to the ward whenever the guardian seeks authority to act. Such cooperation was practiced in this case. When CNB found it advisable to spend $25,000 to repair the home in question it apparently consulted the ward, obtained her consent, and filed it in court.
In order to successfully implement the voluntary guardianship, it is essential that both guardian and ward understand which property has been placed under the guardian's control. Further, the guardian must ensure that the ward understands that if the ward wishes to deal with any of that property, the ward must so inform the guardian and either a) seek court approval of the transaction, or b) petition for transferral of the property to the ward's control. We do not share the district court's fears of "willy-nilly" transfer of the ward's property, *873 finding persuasive the California Supreme Court's holding in Board of Regents State Universities, State of Wisconsin v. Davis, 14 Cal.3d 33, 120 Cal. Rptr. 407, 533 P.2d 1047, 1054 (1975):
Finally, we do not accept defendant's contentions that recognition of the conservatee's right to contract will frustrate the purposes of the Conservatorship Act and render unmanageable the administration of conservatorships. The fact that two persons co-manage property does not necessarily mean that the property thereby becomes unmanageable. Many types of relationships are premised upon co-management. (E.g., tenancy in common, joint tenancy, community property.) In some situations, in fact, the conservator will more likely play the role of supervisor rather than co-manager as in the case of a conservatee, not adjudged an incompetent, who has entered into reasonable contracts.
Wishing to impose no burdensome technical requirements upon the administration of voluntary guardianships, we wish to stress the limited nature of the court's inquiry. In this context, court approval represents more of a supervisory function than the more detailed inquiry required when an incompetent ward is involved. The approval need not follow a long and drawn-out process. First, notice need be given only to the ward and those specified by the ward. Second, the court need only ensure that the ward is aware of and does not contest the action, that the transaction will not interfere with the ward's maintenance or living expenses, and that, in sum the transaction is in the ward's best interests.
The ward may, of course, at any time terminate the guardianship and dispose of the property. It is likely, however, that one who has sought the protecting review of the court will defer to its findings. That decision ultimately lies with the ward.
Finally, we turn to the district court's holding that the deed here in question "was ineffective to convey title to Bryan because the court that had jurisdiction over the guardianship never authorized or approved that conveyance." 468 So.2d at 247. We disagree. While generally issues raised in guardianship proceedings are properly resolved in the probate division of the circuit court, we find that under the circumstances of the case at bar all relevant questions involving the deed's validity were properly determined in the civil division of the same court. In this case, the probate court entered an order on the petition of CNB, at that point serving as both guardian and personal representative, finding that the ward's death prevented the court from exercising further jurisdiction and that "the issue raised by [the order seeking confirmation of the sale] is moot so far as this guardianship is concerned."
We disagree with the probate judge's conclusion that the ward's death rendered the question of the deed's validity moot; that court could well have concluded the business before it and resolved the issue. At the time of the ward's death on May 10, 1981, four separate evidentiary hearings on the petition seeking approval of the deed had been heard over the course of more than three months. When the ward had taken every step possible to convey the property during her lifetime, Panzirer v. Deco Purchasing, 448 So.2d 1197 (Fla. 5th DCA 1984), and when all evidence bearing on the question had been properly presented to the court, it could properly have exercised its power to rule on the deed's validity.
We refuse to find, however, that it was the only court possessed of jurisdiction to evaluate the questions involved. Bryan, essentially left with no other recourse after the probate court found the question "moot," brought a quiet title action involving identical issues in the civil division of the circuit court. In resolving that action, all heirs were allowed to object and present evidence on undue influence and unclean hands, and all possible objections to the deed's validity were properly raised and aired. Further, the civil division of the *874 circuit court had jurisdiction over the property and over all interested parties, including the grantee, the heirs, and the personal representative of the estate.
We therefore find that under these circumstances the civil division's findings as to the deed's validity constituted the court approval required under section 744.441(12). While ordinarily such questions are to be resolved in the probate court, we agree with the court's observation in In Re: Guardianship of Bentley, 342 So.2d 1045, 1046 (Fla. 4th DCA 1977), that "[t]he question involved is not one of jurisdiction. The Circuit Court has jurisdiction as prescribed by the Constitution and general law... . All of the judges of the Circuit Court are authorized to exercise that court's jurisdiction. However, for efficiency in administration, the Circuit Court is frequently divided into divisions, with each division handling certain types of cases." We note that the district court affirmed the civil division's findings as to undue influence and unclean hands, apparently assuming that the trial court had jurisdiction over at least those aspects of the proceedings. CNB presents no persuasive argument that the jurisdictional walls acknowledged by the district court as to the crucial question of the deed's validity should be allowed to stand, at the cost of a fair result in this case.
In sum, we hold that court approval was necessary in order to validate the deed in this case, involving property surrendered to the guardian's control, and that sufficient court approval has been obtained.
We therefore approve in part and quash in part the opinion here under review.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
Because I find that this Court does not have jurisdiction and because I disagree with the holding of the majority opinion, I must respectfully dissent.
I cannot discern how the decision below conflicts with the decision in Fleming v. Fleming, 352 So.2d 895 (Fla. 1st DCA 1977), cert. denied, 367 So.2d 1123 (Fla. 1979). In the decision below, the district court of appeal held that someone who voluntarily turns over all his property to a guardian cannot then convey the property without the guardian's authorization and approval. In Fleming, the deeds in question were executed before an involuntary guardian had been appointed. There was no voluntary guardianship involved. The two cases are so factually dissimilar as to preclude any basis for finding direct conflict.
I also disagree with the majority's holding that the responsibilities of a guardian of a voluntary guardianship are different from those of a guardian of an involuntary guardianship. Section 744.341(2), Florida Statutes (1977), specifically provides: "Any guardian appointed under this section shall have the same duties and responsibilities as are provided by law as to guardians of property generally."
The difference between voluntary and involuntary guardianships is not in the responsibilities or duties of the guardian once appointed, but rather in the process of the appointment of the guardian. In an involuntary guardianship, the ward has to first be adjudicated incompetent after a formal hearing and an examination of the ward by a committee of one responsible citizen and two practicing physicians. § 744.331, Fla. Stat. (1985). "When a person is adjudicated mentally or physically incompetent, a guardian of the person shall be appointed, and a guardian of the property may be appointed." § 744.331(9), Fla. Stat. (1985). Hence the fact that a person has been adjudicated incompetent does not necessarily mean that a guardian of that person's property has been appointed.
In contrast the process for voluntary guardianships is not nearly as formal and, by its very nature, requires the appointment of a guardian. The person requesting *875 that a guardian be appointed for his estate need only file a petition "accompanied by a certificate of a licensed physician that he has examined the petitioner and that the petitioner is competent to understand the nature of the guardianship and his delegation of authority." § 744.341(1), Fla. Stat. (1985). The court shall appoint a guardian upon finding that the petitioner is incapable of the care, custody, and management of his estate by reason of age or physical infirmity.
Once a guardian of the property is appointed under either process, then the duties and responsibilities are the same with respect to custody and control of the ward's property. The primary responsibility is to protect and preserve the property and to invest it prudently and account for it faithfully. § 744.377, Fla. Stat. (1985). To carry out this responsibility, the guardian must exercise his independent judgment. If he has any doubt as to his authority, he can petition the court for approval to act. § 744.441, Fla. Stat. (1985). This scheme does not contemplate the ward being allowed to make inter vivos transfers of property. Webster & Moorefield, P.A. v. City National Bank of Miami, 453 So.2d 441 (Fla. 3d DCA 1984); Citizens State Bank & Trust Co. of Hiawatha v. Nolte, 226 Kan. 443, 601 P.2d 1110 (1979).
In this case, especially because it appeared that the conveyance of property may not have been in the ward's best interest, it was mandatory for the guardian to petition the court for approval before the ward's property could be conveyed. This was not timely done as contemplated by the statute. Since the court had determined, as evidenced by the appointment of a guardian, that the ward was incapable of the care, custody and management of her estate, she could not give or convey her home without having the deed signed by the guardian, who in turn needed the court's approval. Since the deed in this case had not been executed by the guardian it was improperly executed. See 39 C.J.S. Guardian & Ward § 133 (1976).
In the absence of specific statutory authorization, a guardian's authority terminates upon the death of a ward. 60 A.L.R.2d 963 (1958). Because there is nothing in the Florida Statutes granting a guardian any authority to act after a ward's death, the guardian was not empowered to sign the deed after the ward's death nor could it continue seeking approval of the conveyance of property. Since the deed had not been executed by the guardian nor had court approval been obtained during the ward's life, the execution of the deed was invalid.
Because I agree with the opinion of the district court of appeal and would therefore approve that court's decision, I respectfully dissent.