PER CURIAM.
 

 Claimant challenges an order of the Judge of Compensation Claims (JCC) granting the Employer/Carrier’s (E/C) Motion for Repayment of Seed Money, arguing the JCC erred by reforming a final contract of settlement between the parties. We agree, and reverse.
 

 The parties to this workers’ compensation claim entered into a settlement agreement, which included funds for Claimant to establish a workers’ compensation Medicare Set-Aside Account (MSA). The settlement contract expressly states that Claimant, and not the E/C, is responsible for administering the MSA. The agreement provides that the sums allocated for the MSA (which included “seed money” in the amount of $10,851.08, and $38,694.64 for the purchase of an annuity yielding $2,154.18 per year) were final, not subject to change (or reallocation), and not dependent on the approval of the Center for Medicare and Medicaid Services’ (CMS). Moreover, the agreement provides that the sums allocated for the funding of the MSA were to be paid within 30 days of the order approving attorney’s fees, at which time all claims, petitions, and causes of action would be dismissed with prejudice. In the agreement, the parties agreed that if CMS determines “more money is necessary for future medical expenses,” Claimant would be responsible for “paying or funding” the difference.
 

 Ten months after the JCC entered an order approving the attorney’s fees relative to the settlement, the E/C filed a motion alleging it had received correspondence from CMS indicating the gross amount of the parties’ proposed MSA was accurate, but the sums projected for annual deposits into the MSA were deficient. The motion requested the JCC to compel Claimant to reimburse an alleged “overpayment”
 
 [1]
 
 of seed money, so the E/C could purchase the annuity it had promised to fund as part of the agreement (but which it had not yet purchased). Claimant contested the motion, arguing the settlement agreement was final and not dependent on CMS’ approval, and she alone was responsible to satisfy CMS’ requirements; therefore, the JCC had no jurisdiction to resolve a dispute between her and a federal agency. Additionally, Claimant argued that the E/C was in breach of the agreement by failing to purchase the annuity as promised.
 

 The JCC entered an order granting the E/C’s motion, reasoning Claimant agreed to pay or fund the difference should CMS deem more money was necessary for future medical expenses and, because CMS made such a determination, Claimant was required to return monies so the E/C could purchase an annuity to satisfy CMS’ requirements.
 

 A JCC is authorized to determine whether a valid, binding settlement agreement was reached and, if so, to establish its terms.
 
 See Chubb Group Ins. Co. v. Easthagen,
 
 889 So.2d 112 (Fla. 1st DCA 2004). The JCC has authority to
 
 *868
 
 give effect to the terms of a settlement agreement.
 
 See Jacobsen v. Ross Stores, 882
 
 So.2d 431, 433 (Fla. 1st DCA 2004). A JCC has jurisdiction to determine whether a party complied with the terms of a settlement agreement.
 
 See McCallum v. Palm Beach County Sch. Dish,
 
 969 So.2d 562 (Fla. 1st DCA 2007) (holding where settlement resolved all claims but also contained employer’s promise to indemnify employee for any liens filed by Medicare, JCC had jurisdiction subsequent to settlement to ensure employer complied with the agreement).
 

 Based on the authority cited herein, we agree with the JCC that he had jurisdiction over the parties and subject matter to determine whether Claimant was in compliance with the terms of the agreement. We do not agree with the JCC’s interpretation of the written contract, however, because it renders essential terms void and constitutes an impermissible rewrite of the parties’ agreement.
 

 The standard of review with respect to a JCC’s interpretation of a written settlement agreement is de novo.
 
 Klatt v. Wal-Mart Stores, Inc.,
 
 913 So.2d 79, 80 (Fla. 1st DCA 2005). Interpretation of settlement agreements is governed by contract law.
 
 See Munroe v. U.S. Food Serv.,
 
 985 So.2d 654, 655 (Fla. 1st DCA 2008). Contracts are to be construed in accordance with the plain meaning of the words contained therein, and it is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties.
 
 See Churchville v. GACS Inc.,
 
 973 So.2d 1212, 1216 (Fla. 1st DCA 2008).
 

 Although the agreement clearly provides that Claimant is solely responsible for administering the MSA, and satisfying any requirements of CMS (a proposition Claimant does not contest), nothing in the agreement requires Claimant to contribute, in any way, to the E/C’s primary responsibilities under the contract (i.e., to pay the sums promised and purchase the annuities as agreed to). The E/C agreed that the sums designated in the settlement agreement were final, not subject to reallocation, due within 30 days of the JCC’s order, and not subject to CMS approval. Moreover, an express provision of the agreement relating to the annuity payments states:
 

 Each Party herein acknowledges and agrees that neither the Periodic Payments nor any rights thereto or interest therein (collectively, “Payment rights”) can be accelerated, deferred, increased or decreased by such Party ...
 

 And with respect to the specific fact scenario presented here, the parties agreed:
 

 ... Finally, the parties acknowledge, understand and agree that no action or decision by CMS concerning [Claimant’s eligibility or the sum of money required to be set-aside for [C]laimant’s future Medicare-covered costs will render this release void or otherwise ineffective, or in any way affect the finality of [Claimant’s workers’ compensation settlement.
 

 By not purchasing the annuity as promised the E/C created a predicament whereby the JCC was forced to rectify the potentially conflicting provisions which, on one hand, provided the annuity amounts were fixed, not subject to change, and not dependent of CMS’ approval, and on the other hand, made Claimant responsible for any deficiencies later identified by CMS. The JCC’s order rewrites the parties’ agreement. Although the parties’ agreement does not set forth the means by which Claimant was to fund or pay for any shortcomings of the MSA, the clear and unambiguous language of the agreement provides that the annuity amounts are not subject to change and are not to be affected by actions of CMS. As argued by
 
 *869
 
 Claimant, under the agreement she is solely responsible for satisfying CMS’ requirements for administration of the MSA, and she is free to resolve any existing dispute with CMS without the E/C’s involvement.
 

 The date of the accident is not material to the issue before the court.
 

 REVERSED and REMANDED for proceedings consistent with this opinion.
 

 BARFIELD, PADOVANO, and LEWIS, JJ., concur.
 

 [1]
 

 . The amount paid to Claimant as seed money was in accordance with the express terms of the parties’ agreement and, thus, was not an overpayment. The E/C titled this an “overpayment,” because CMS indicated the initial deposit required for funding the MSA was less than the amount to which the parties agreed. From this, the E/C, not CMS, apparently concluded that a solution to this dilemma was to have Claimant return a portion of the seed money, so that the E/C could purchase an annuity which was in accordance with CMS' request, as opposed to the annuity required by the agreement.