O’KANE, J.H., Associate Judge.
Appellant, Jeffrey Whiting, timely appeals the trial court’s summary judgment in favor of Appellee, Anthony Whiting. Because we find that genuine issues of material fact exist with regard to the interpretation of the Order Appointing Guardian upon Stipulated Limited Guardianship, we reverse.
Lorraine Whiting[1] had three sons: Jeffrey, Anthony, and Nicholas Whiting.[2] In 1991, Mrs. Whiting created the Lorraine Y. Whiting Trust (“Trust”), which provided for an equal distribution of the Trust assets to her sons upon her death. Mrs. Whiting amended and restated the Trust several times to allow for an early distribution of assets to Jeffrey in the amount of $153,000, and a priority payment with interest of that same amount to Anthony and Nicholas upon Mrs. Whiting’s death. Pursuant to the terms of the First Amendment to the Trust, after the priority payments were made, all subsequent distributions from the Trust were to pass equally to her three sons.
In 2008, concerns about Mrs. Whiting’s mental competency arose. In December 2008, Anthony petitioned for and was appointed emergency temporary guardian of Mrs. Whiting’s property. In that capacity, he was given full control over her financial affairs and the responsibility to protect and preserve her assets. Shortly thereafter, Jeffrey filed a competing petition seeking appointment as plenary guardian over his mother’s person and property. Both petitions asserted that she was incapacitated due to memory loss, *923 unable to promptly and intelligently address her financial matters, and subject to the influence of others. Each brother was represented by counsel in the guardianship proceedings, and attorney William Wieland represented Mrs. Whiting.
Litigation between the brothers and their mother continued from 2008 through 2010. During this period, several healthcare professionals examined Mrs. Whiting’s mental faculties to determine whether she was competent to manage her own affairs. While several experts determined that she was incapacitated and recommended the appointment of either a limited or plenary guardian, others determined that she was competent and a guardianship was unnecessary.
Prior to any final determination of Mrs. Whiting’s capacity, the parties entered into a Stipulation for Limited Guardianship (“Stipulation”).[3] Based upon the Stipulation, the trial court entered its Order Appointing Guardian upon Stipulated Limited Guardianship (“Guardianship Order”). Although there was no formal finding of incapacity, the Stipulation and Guardianship Order imposed restrictions and limitations on Mrs. Whiting’s ability to dispose of certain property and appointed Theresa Barton as limited guardian. In relevant part, the Guardianship Order restricted Mrs. Whiting’s ability to manage her personal financial affairs beyond a $1,500 limit for any single transaction. With regard to her ability to give gifts to family members, the Guardianship Order contained the following language: “All gifts by [Mrs. Whiting] will be limited to a maximum of $1,500.00 per person, in any form including but not limited to cash, goods, services, tuition, scholarships, loan repayments, advances, debt reduction or elimination, to persons related to Mrs. Whiting by blood only, per calendar year.” The parties also agreed that the guardianship could not be changed or terminated without court order.
Shortly after the Guardianship Order was entered, Mrs. Barton expressed several concerns with it. Specifically, she questioned whether the guardianship was voluntary or involuntary. She pointed out that if a voluntary guardianship was intended, then a certification from a physician verifying Mrs. Whiting’s competency was required; however, no such certification accompanied the parties’ Stipulation. After the parties failed to adequately address Mrs. Barton’s concerns, she declined to serve as guardian.
Despite the Guardianship Order, Mrs. Whiting executed the Second Amendment to the First Restatement of the Trust (“Second Amendment”) in 2010, designating Jeffrey sole residuary beneficiary of the Trust. Anthony learned of the Second Amendment only after Mrs. Whiting’s death in October 2011.
In January 2013, Anthony filed his complaint to set aside the Second Amendment. In his complaint, he alleged that Mrs. Whiting did not have the power to amend the Trust because of the specific terms of the Stipulation and Guardianship Order.[4] He sought summary judgment based upon the plain language of the Guardianship Order. Jeffrey opposed the entry of summary judgment and submitted affidavits from several individuals, including Mr. *924 Wieland and James Barks, the attorney who drafted the Second Amendment. He argued, inter alia, that the Guardianship Order contained no restrictions or limitations on Mrs. Whiting’s power to change her Trust, and that the trial court should consider parol evidence in determining whether the parties intended to limit her ability to amend the Trust. In support, Jeffrey also submitted Mr. Wieland’s affidavit, which asserted that neither he nor Mrs. Whiting agreed to limit her ability to change the Trust as part of the Stipulation.
In granting summary judgment, the trial court concluded that the Guardianship Order was clear and unambiguous, and therefore refused to consider parol evidence of the parties’ intentions. The trial court further construed the provisions limiting Mrs. Whiting’s ability to engage in certain financial transactions or give gifts greater than $1,500 as an unambiguous restriction on her ability to alter the Trust. As a result, the trial court set aside the Second Amendment and restored the prior Trust provisions dividing the Trust assets equally amongst Jeffrey, Anthony, and Nicholas.
We review the trial court’s entry of final summary judgment de novo. Gee v. U.S. Bank Nat’l Ass’n, 72 So.3d 211, 213 (Fla. 5th DCA 2011) (citing The Fla. Bar v. Greene, 926 So.2d 1195, 1200 (Fla.2006)). The interpretation of a settlement agreement is also subject to de novo review. Ferreira v. Home Depot/Sedgwick CMS, 12 So.3d 866, 868 (Fla. 1st DCA 2009).
Jeffrey asserts, inter alia, that the trial court erred by not considering parol evidence in construing the provisions of the Stipulation and Guardianship Order. The parol evidence rule provides that a complete and unambiguous written agreement may not be contradicted or modified by extrinsic evidence. See Polk v. Critten-den, 537 So.2d 156, 159 (Fla. 5th DCA 1989). However, an exception to the parol evidence rule arises when an agreement contains a latent ambiguity. See Jenkins v. Eckerd Corp., 913 So.2d 43, 55-56 (Fla. 1st DCA 2005). Latent ambiguities exist when the language of an agreement is facially clear but an extrinsic fact creates a need for interpretation. GE Fanuc Intelligent Platforms Embedded v. Brijot Imaging Sys. Inc., 51 So.3d 1243, 1245 (Fla. 5th DCA 2011) (citing Deni Assocs. of Fla., Inc. v. State Farm Fire & Cos. Ins. Co., 711 So.2d 1135, 1139 (Fla.1998)). Latent ambiguities are “thus brought to light when extraneous circumstances reveal ‘an insufficiency in the contract not apparent from the face of the document.’ ” Id. at 1245 (quoting Hunt v. First Nat’l Bank of Tampa, 381 So.2d 1194, 1197 (Fla. 2d DCA 1980)); accord Berkowitz v. Delaire Country Club, Inc., 126 So.3d 1215, 1219 (Fla. 4th DCA 2012) (“Patent ambiguities are on the face of the document, while latent ambiguities do not become clear until extrinsic evidence is introduced and requires parties to interpret the language in two or more possible ways.” (quoting Prime Homes, Inc. v. Pine Lake, LLC, 84 So.3d 1147, 1151 (Fla. 4th DCA 2012))). Extrinsic evidence may be used to clarify latent ambiguities. See Conway v. Conway, 111 So.3d 925, 927 (Fla. 1st DCA 2013).
On examination of the Stipulation and Guardianship Order, we conclude that ambiguities exist that present genuine' issues of material fact precluding summary judgment. Initially, we note that it is not clear whether the guardianship intended by the Guardianship Order was a voluntary or involuntary guardianship. Voluntary guardianships require a court to affirmatively find the ward mentally competent. Bryan v. Century Park Nat’l Bank, 498 So.2d 868, 870 (Fla.1986). When seeking a voluntary guardianship, *925 “[t]he petition for appointment of a voluntary guardian must be accompanied by a physician’s certification that the ward is competent to understand the nature of the guardianship and the delegation of authority involved.” Id. at 872. Although voluntary guardianships are presumed to grant the guardian plenary authority, the parties may request the court to grant the guardian limited authority. § 744.341(3), Fla. Stat. (2014). A voluntary guardianship may be terminated by the ward by filing a notice with the court that the voluntary guardianship is terminated. Id. § 744.341(5).
By contrast, an involuntary guardianship requires an adjudication by the court that the ward lacks capacity. Id. § 744.344(3); Bryan, 498 So.2d at 870. Once formed, plenary guardianships grant all of the ward’s delegable rights over person and property to the guardian, while limited guardianships grant only that authority expressly set forth in the guardianship order. Id. § 744.344(5)-(6).
Here, the trial court never specifically found that Mrs. Whiting was incapacitated. The lack of such a finding suggests that Mrs. Whiting agreed to a voluntary guardianship. However, the Stipulation did not include the required certificate from a physician finding her competent to understand the nature of the guardianship. If the parties intended to form a voluntary guardianship, it makes little sense to include a limitation on Mrs. Whiting’s power to change or terminate the guardianship without court order.
Additionally, the language of the Stipulation and Guardianship Order does not clearly address whether Mrs. Whiting retained the power to amend the Trust or any other estate planning documents. Indeed, neither the Stipulation nor Guardianship Order contain an express provision precluding Mrs. Whiting from amending the Trust. Anthony argues that by limiting Mrs. Whiting’s power to make any gifts over $1,500, she no longer had the authority to amend the Trust because a “gift” includes both inter vivos and testamentary gifts. Although this may be true, Mr. Wieland’s affidavit reflects that he and Mrs. Whiting rejected the inclusion of any language in the Stipulation and Guardianship Order that would limit her ability to alter her estate plan.
In sum, genuine issues of material fact exist concerning the interpretation of the Stipulation and Guardianship Order as they relate to Mrs. Whiting’s power to amend the Trust. Thus, the trial court erred in granting summary judgment and setting aside the Second Amendment. On remand, the trial court should consider parol evidence in properly interpreting the Stipulation and Guardianship Order.
REVERSED AND REMANDED.
SAWAYA and WALLIS, JJ„ concur.

. Mrs. Whiting died on October 16, 2011.

. Nicholas Whiting died on June 13, 2008. Anthony was appointed personal representative of his estate.

. The Stipulation was signed by the attorneys representing each party, including Mrs. Whiting. After the entry of the Guardianship Order, Mrs. Whiting sent the trial court correspondence, which stated that she no longer wanted Mr. Wieland’s legal services.

. Anthony also alleged that Mrs, Whiting did not have the testamentary capacity to execute the Second Amendment. This argument was not included in his summary judgment motion, and thus was not considered by the trial court in its summary judgment order.